UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                            :
JACK KOURY, et al.                          :        CASE NO. 1:04-CV-02248
                                            :
        Plaintiffs,                         :
                                            :
vs.                                         :        OPINION & MEMORANDUM
                                            :        [Resolving Doc. No. 26]
CITY OF CANTON, et al.                      :
                                            :
        Defendants.                         :
                                            :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Plaintiffs Jack Koury, Don Campbell, and Bench Signs Unlimited, Inc. ("Bench Signs") sued

Defendants City of Canton and several city officials in their official and individual capacities on

November 12, 2004.[1]  Citing incidents allegedly stemming back to 1993, the plaintiffs claim that

the defendants violated Plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment rights as well as

the rights secured under Article 1, Section 10 of the United States Constitution by selectively

enforcing certain zoning, housing, and other city code provisions against the plaintiffs.  In addition

to their claim under 42 U.S.C. § 1983, the plaintiffs also make a state law claim for tortious

interference with contract, alleging that Defendants intentionally caused the breach or termination

_____

        [1]  The Defendant city officials include: (1) Jane Weir Creighton, City of Canton Mayor; (2) Richard D. Watkins, former City of Canton Mayor; (3) Ray Denczak, Canton City Council President; (4) Mary N. Babcock, Canton City Council Member; (5) Donald E. Casar, Canton City Council Member; (6) Thomas Bernabei, Canton City Council Member; (7) Greg Hawk, Canton City Council Member; (8) Thomas E. West, Canton City Council Member; (9) Richard A. Mallon, II, Canton City Council Member; (10) Kelly Zachary, Canton City Council Member; (11) Terry Prater, Canton City Council Member; (12) David R. Dougherty, Canton City Council Member; (13) Richard Hart, Canton City Council Member; (14) Rosemary Diamond, Canton City Council Member; (15) Joe Carbenia, Canton City Council Member; (16) Roger Westfall, Chief Building Official for the City of Canton; (17) Darla Hinderer, Zoning inspector for the City of Canton; and (18) Richard Zengler, former Zoning Inspector for the City of Canton.

Case No. 1:04-CV-02248
Gwin, J.

of several contracts between the defendants and various third parties, including the Stark Area

Regional Transit Authority (SARTA).

On August 8, 2005, the defendants filed a Motion for Summary Judgment as to all of

Plaintiffs' claims.  [Doc. No. 26].  In this motion, the defendants maintain that certain of Plaintiffs'

section 1983 claims, namely those relating to a bench signs dispute, are barred by the doctrine of

claim preclusion, the Rooker-Feldman doctrine, and the applicable statute of limitations.  They also

argue that the plaintiffs fail to show that the defendants violated any of the plaintiffs' constitutional

rights.  In the alternative the defendants argue that the council member defendants are entitled to

absolute legislative immunity, that all named defendants are entitled to qualified immunity, and that

the plaintiffs fail to provide evidence sufficient to establish a *Monell* claim against the City.  Finally,

the defendants assert that Plaintiffs' state law claim for tortious interference with contract fails as

a matter of law and is time-barred in so much as it involves the contract between SARTA and Bench

Signs.  The plaintiffs oppose Defendants' motion.  [Doc. No. 40].

For the reasons stated below, this Court **GRANTS** Defendants' Motion for Summary

Judgment.

<u>**BACKGROUND**</u>

The plaintiffs' present dispute with the City of Canton and many of its officials began in the

early 1990s and involves a string of allegedly discriminatory or retaliatory acts aimed at the

Plaintiffs.  The conflict generally centered around a business the Plaintiffs started that placed

benches along rapid transit routes and rented advertising on the benches.  In describing the dispute,

the Plaintiffs cite numerous and often unrelated encounters with different city officials over the

years. The plaintiffs' complaints fall into two different categories.  The first involves the plaintiffs'

-2-

Case No. 1:04-CV-02248
Gwin, J.

general interaction with the City and various city officials regarding the Bench Signs business and Plaintiff Koury's attempts to secure various liquor licences and housing certificates. The second category involves the plaintiffs' allegations against specific city officials.

I.     General Interaction with the City of Canton

A.     *Bench Signs*

Sometime in or around 1993, Plaintiffs Koury and Campbell formed a partnership known as Bench Signs Unlimited. Through Bench Signs, the plaintiffs entered into an agreement with a regional public transportation system, SARTA, to place benches displaying advertisements ("bench signs") alongside SARTA bus routes. At this time, the City of Canton had no laws specifically regulating bench signs, though it did prohibit the obstruction of sidewalks and other public rights-of-way. *See* Canton Ordinance § 521.16. On November 7, 1994, the City passed Canton Ordinance § 1130.09 ("1994 Bench Signs Ordinance"), authorizing the placement of bench signs at SARTA bus stops. The ordinance contained a number of regulations or conditions on the placement of bench signs, including a requirements that the owner obtain a permit for each bench, that no more than one bench be placed at each bus stop, and that the benches be placed two feet from the street curb and parallel to the street.

In order to comply with the new ordinance, the plaintiffs purchased 400 zoning permits at twenty dollars each in January 2005.[2]

---

[2] For administrative ease, the permits were consolidated into one document, recorded as Permit No. 95-14. Whether this document was to be considered a single permit for up to 400 bench signs or a representation of 400 separate permits later became in issue in the state court bench signs litigation that began in 2000. *See City of Canton v. Bench Signs Unlimited*, No. 2000 CV 02581, slip op. (Stark County Ct. C.P. June 14, 2001). The City believed the document to be a single permit and the Stark County Court of Common Pleas agreed; however, an Ohio appellate court later reversed this holding, finding that the document represented 400 individual permits. *See City of Canton v. Campbell*, No. 2001 CA 00205, 2002 WL 571692 (Ohio Ct. App. April 15, 2002).

Case No. 1:04-CV-02248
Gwin, J.

In February 1996, Bench Signs entered into a second lease agreement with SARTA, which allowed the plaintiffs to place benches at SARTA bus stops for a five-year period.  The defendants maintain that shortly thereafter the Canton Zoning Inspector, Richard Zengler, began receiving complaints about the benches.  The complaints included: (1) several of the benches were blocking access to sidewalks or were placed too close to the street and created safety concerns; (2) multiple benches were placed at a single bus stop; (3) benches were placed on private property without authorization; and (4) that the benches caused trash and litter to accumulate in the area of the benches.[3/]

As a result of these complaints, Inspector Zengler issued several demands to the plaintiffs to bring the benches into compliance with the 1994 Bench Signs Ordinance.  According to the plaintiffs, however, many of the City's demands related to benches that were legally and properly installed. They argue that the City demanded the benches be removed for impermissible grounds. For example, the plaintiffs cite to three occasions where the City allegedly demanded that bench signs be either removed or relocated based solely on the content of the signs.[4/]  The plaintiffs also allege that in another situation when they refused to remove a lawfully placed bench due to an existing contractual obligation, the City either forced or persuaded SARTA to move the bus stop where the bench was situated to another location, rendering Plaintiffs' permit invalid.  The plaintiffs

---

[3/] The Defendants note that they were not the only people to experience problems with Plaintiffs' bench signs. Other local municipalities, such as Lake Township, Plain Township, and Jackson Township, allegedly experienced similar problems.  These disputes resulted in several lawsuits.  *See Bench Signs Unlimited v. Lake Township Board of Zoning Appeals*, 149 Ohio App. 3d 462, 777 N.E. 2d 912 (2002); *Campbell v. Plain Township Board of Zoning Appeals*, No. 1995 CA 00352, 1996 WL 488773 (Ohio Ct. App. July 1, 1996); *Campbell v. Jackson Township Board of Zoning Appeals*, No. 1995 CA 00223, 1996 WL 74077 (Ohio Ct. App. Feb. 20, 1996).

[4/] Allegedly, the City requested that the plaintiffs remove an ad for an entertainment service called "Extra Large Belly Dancer and Barney" and an ad for "Man Power, Inc."  Additionally, the City requested that the plaintiffs remove an ad for a funeral home that was located in front of a competing funeral home.

Case No. 1:04-CV-02248
Gwin, J.

agree that these events occurred sometime between ten to twelve years prior to the filing of this suit.

The parties' disagreements over the bench signs eventually led to litigation in April of 1998, when the plaintiffs filed a complaint in the United States District Court for the Northern District of Ohio, alleging that the 1994 Bench Signs Ordinance was unconstitutional. That case was eventually dismissed.

Two years later, in October of 2000, the City filed a complaint against the plaintiffs in Stark County Common Pleas Court seeking to enforce the 1994 Bench Signs Ordinance and revoke Plaintiffs' permits.[5/] Thereafter, on March 23, 2001, Defendant Zengler revoked the permits issued to the Plaintiffs. In June of 2001, the trial court granted the relief sought by the Canton Defendants and upheld the revocation of Permit No. 95-14. The state court ordered the plaintiffs to remove all benches within thirty days and authorized the City to remove any remaining benches after that thirty day period. The plaintiffs then sought a stay of execution, which the trial court and appellate court denied. In July 2001, after the plaintiffs failed to comply with the court order, the City removed the benches and placed them in storage at the Canton recycling center. The plaintiffs maintain that this effectively shut down Bench Sign's entire business.

Meanwhile, the plaintiffs had appealed the trial court's ruling and on April 15, 2002, the Fifth District Court of Appeals of Stark County reversed the trial court's decision.[6/] The Court of Appeals found that Permit No. 95-14 actually represented 400 separate permits and that the City could not revoke all 400 permits without giving the Plaintiffs notice of some violation and an

---

[5/] *See City of Canton v. Bench Signs Unlimited*, No. 2000 CV 02581, slip op. (Stark County Ct. C.P. June 14, 2001).

[6/] *See City of Canton v. Campbell*, No. 2001 CA 00205, 2002 WL 571692 (Ohio Ct. App. April 15, 2002).

-5-

Case No. 1:04-CV-02248
Gwin, J.

opportunity to cure that violation with regard to each.  The appellate court remanded the case to the

trial court to determine which permits the city could properly revoke in compliance with the zoning

code.  On remand, the trial court determined that the City had properly revoked sixty-six of the

permits.

The plaintiffs claim they faced difficulties retrieving the benches from the City.  They say

that it took nearly sixty days to get all of the benches back.[7]  The City had also allegedly damaged

some of the benches in moving them, requiring the plaintiffs to purchase replacements.  The

Plaintiffs further maintain that even after they retrieved the benches, Bench Signs took several

months to reestablish prior business deals and that the company never fully recovered from the

interruption.

Even without the problems Plaintiffs allegedly encountered in reestablishing business, it

appears that the demise of Bench Signs was inevitable.  First, Bench Signs' five year agreement with

SARTA expired in 2001.  Separate from the expiration of the SARTA contract, a question exists

whether SARTA ever had authority to authorize the placement of benches on private property or

public right-of-way.  Also, on July 15, 2002, only months after the Ohio appellate court decision,

the City passed a new ordinance that entirely eliminated the use of bench signs in Canton after a

ninety day amortization period.[8]  According to the defendants, Zoning Inspector Zengler

recommended this change during a meeting with Canton City Council.  Zengler claimed that the

bench signs were a nuisance, violated the Americans with Disabilities Act, created traffic hazzards,

and detracted from the aesthetics of the community.

_____

[7] Notably, the Plaintiffs do not explain the extent to which this delay is ultimately attributable to defendants.

[8] Canton Ordinance No. 110-2202 ("2002 Bench Signs Ordinance").

Case No. 1:04-CV-02248
Gwin, J.

On February 10, 2003, before taking any enforcement action, the City sought a declaratory judgment from the Stark County Common Pleas Court.  The City asked that Court to find that the 2002 Bench Signs Ordinance was valid.[9/]  The plaintiffs counterclaimed against the City, alleging that the ordinance amounted to a governmental taking, entitling Plaintiffs to just compensation.  On January 12, 2004, the trial court held that the 2002 Bench Signs Ordinance was constitutional and did not constitute a governmental taking.  The plaintiffs appealed this ruling, but the appellate court affirmed the trial court's holding.[10/]  Having failed to reverse the court of appeals judgment, and having failed to take further appeal, that judgment became res judicata as between the parties.

    *B.*      *Liquor Licences*

Shortly after the bench signs controversy arose, Plaintiff Koury allegedly began to experience other problems with Canton officials in connection with Koury's attempts to obtain several liquor licenses.  First, Koury says that around 1997, he attempted to open a drive-through liquor store at 2400 Mahoning Avenue, but that the Ohio State Division of Liquor Control ("Liquor Licensing Board") denied his application for a liquor license.[11/]  Koury believes the denial resulted from the City's objections to him obtaining the license, but gives no evidence as to what statements if any the City actually made to the Liquor Licensing Board.  Although he believes City objections led to the denial, Plaintiff Koury acknowledges that the Liquor Licensing Board had concerns over traffic problems that may result from the business.  Plaintiff Koury also claims that another individual was awarded a liquor license for a Minute Mart convenience shop located between one

---

[9/] *City of Canton v. Bench Signs Unlimited*, No. 2003 CV 00485., slip op. (Stark County Ct. C.P. June 14, 2001).

[10/] City of Canton v. Koury, Stark App. No. 2004 CV 00042, 2005 WL 1491497 (unpublished opinion).

[11/] Notably, neither the State of Ohio, nor the Liquor Licensing Board is a defendant in the present suit.

Case No. 1:04-CV-02248
Gwin, J.

and two blocks from the 2400 Mahoning Avenue property.

A short time later, Plaintiff Koury purchased another commercial building at 912-914 12th Street, again with the intention of opening a drive through liquor store.  On July 7, 2000, the Liquor Licensing Board rejected Koury's application for a liquor license at this location as well.   Plaintiff Koury claims that the City objected to this liquor license in order to pressure him into complying with the defendants' requests to remove certain bench signs and in retaliation against him for his failure to cooperate.

In support of this belief, the plaintiffs point to an incident that occurred at the July 12, 1999, Canton City Council meeting.  Koury attended this meeting to discuss various problems with the bench signs.  Apparently, after Koury left the meeting, Canton City Council Member Coleman[12] discussed on the record the fact that he had asked Koury to remove a sign from in front of a funeral home because the sign advertised a competing funeral home.  Coleman subsequently expressed objection to Koury opening a drive through liquor store at the 12th Street location.  The defendants point out, however, that while the Canton City Counsel did request a hearing before the Liquor Licensing Board to discuss the issuance of the permit, the Board was ultimately responsible for deciding to deny Plaintiff Koury's application.

Finally, sometime in 2003, Plaintiff Koury and his associate Wayne Marion bought property located at 719 Cook Avenue S.W. with the intention of opening a drive-through convenience store. Koury alleges that he and Marion determined that Marion would seek a liquor license for the premises due to the disputes between Koury and the City.  As to the permit for the Cook Avenue store, the Canton City Council requested a hearing before the Liquor Licensing Board and objected

_____

[12] The Court notes that Council Member Coleman is not a defendant in the present suit.

Case No. 1:04-CV-02248
Gwin, J.

to the issuance of a liquor license.  The City shows evidence that Council objected to the plan of

Koury and Marion to sell damaged canned goods at the store.  The Liquor Licensing Board

ultimately denied the license on August 9, 2004 on the basis that the Cook Avenue location was a

high crime area.

During this dispute, Marion called Defendant Kelly Zachary, the ward council member for

the Cook Avenue area.  Zachary allegedly told Marion that she objected to the license because

Marion would be selling dented or damaged canned goods.  Because the license application dealt

with a site in her ward, she believed other council members would support her objections.  However,

Zachary informed Marion that her basis for objecting to the license was weak and that Koury and

Marion would likely win an appeal of the Liquor Licensing Board's decision.

Finally, the plaintiffs also allege that Zachary suggested that Marion stop doing business with

Koury.  The plaintiffs claim that Marion chose not to appeal the Board's denial of the license and

to sell his interest in the property based on his conversation with Zachary.   Specifically, the

plaintiffs claim Marion believed he would face further problems with the City if he continued to do

business with Koury.

C.      *Building Permits*

In addition to problems obtaining liquor licenses, Koury also clams to have encountering

several problems with the Canton Building Department.  For example, after the Liquor Licensing

Board rejected Koury's application for the 12th Street location, Koury rented those premises to an

individual intending to open a beauty parlor and car wash.  Koury alleges that this lessee

experienced significant problems with the Building Department, even though the building had

passed City inspection six months earlier.  Koury also says the building should not have problems

-9-

Case No. 1:04-CV-02248
Gwin, J.

passing inspections since it had a new furnace, electrical, and plumbing systems.[13]

Around the same time, Koury purchased another property at 1312 15th Street N.W.  When he attempted to obtain a certificate of housing code compliance from the City, the Building Department allegedly told Koury that all he would need to do was transfer the existing certificate. However, Koury claims that only a short time later the City contacted him to tell him that he needed to obtain a new certificate and have the building reinspected.  Subsequently inspectors viewed the building and required Koury to make certain repairs or changes.  After Koury made the changes, the final inspector came to view the premises, but allegedly issued a new certificate without even going inside.  Koury claims the inspector stated that the reinspection had not been necessary as there was already a valid certificate on file with the City.  In response to these claims, the defendants note the City did grant a certificate of occupancy for both of the properties.

II.     Allegations of Specific Misconduct on the Part of Various City Officials

The Court has already provided a description of the plaintiffs' allegations against Council Member Zachary in the preceding section.  In this section, the Court will briefly describe the remainder of the plaintiffs' allegations relating to individual officials.

Beginning with Mayor Creighton, the Plaintiffs says that at a 2004 meeting of the Elections Board in Columbus, Ohio. Mayor Creighton either stated or caused city council members to state to the Elections Board that Koury was under a court order at the time or was otherwise prohibited from entering government buildings in the City of Canton without a police escort.  Koury maintains that this statement was false and that Creighton made the statement to suppress Koury's freedom of

---

[13] The Plaintiffs do not give a description of the specific problems the lessee faced or any indication as to whether they were ultimately solved.

-10-

Case No. 1:04-CV-02248
Gwin, J.

speech before the Elections Board.

The plaintiffs next allege that the current Zoning Inspector, Defendant Hinderer, retaliated against Koury.  The plaintiffs cite two instances.  In the first, Hinderer allegedly complained of possible zoning code violations occurring at a tire shop.  Koury maintains the activities had gone on for years and that the tire shop had not received any complaints until Koury became associated with the business.  In the second instance, Koury alleges Hinderer sent notices to him concerning the height of the grass at one of Koury's properties, but sent no such notices to neighbors of that property.

Finally the plaintiffs allege that former Zoning Inspector Zengler had a conversation with Plaintiff Campbell in which Zengler told Campbell that he would face less problems in attempting to do business in Canton if he was not involved with Koury.

## LEGAL STANDARD

Summary Judgment is appropriate where the evidence submitted shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court enters summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that show the absence of a genuine issue of material fact.  *Id.* at 323.  A fact is material if its resolution will affect the outcome of the lawsuit.  *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

-11-

Case No. 1:04-CV-02248
Gwin, J.

Once the moving party satisfies its initial burden, the burden shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-moving party cannot avoid summary judgment by resting on its pleadings or reasserting its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present evidentiary material in support of its position. *Celotex*, 477 U.S. at 324.

In deciding a motion for summary judgment, the Court views the factual evidence and draws reasonable inferences in favor of the non-moving party. *National Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). The Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal punctuation omitted). "The mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (citation and internal punctuation omitted). The Court "is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## DISCUSSION

The defendants claim that they are entitled to summary judgment for a number of reasons, as described above. The Court addresses each of these arguments below, dealing with the plaintiffs'

-12-

Case No. 1:04-CV-02248
Gwin, J.

§ 1983 claims and state law claims in turn.[14/]

I.      Plaintiffs' § 1983 Claims

    A.      *The Majority of Plaintiffs' § 1983 Claims are Barred by the Statute of Limitations*

    The defendants argue that the plaintiffs' claims relating to the bench signs business are time-barred.  In response, the plaintiffs argue that these claims are part of a continuing violation of the plaintiffs' rights, thereby tolling the statute of limitations.  The Court finds, however, that the plaintiffs have failed to show evidence that the defendants conduct was a continuing violation.  Because he cannot show a continuing violation, the statute of limitations has run on a number of the plaintiffs' claims.

    Federal law provides no uniform statute of limitations for section 1983 actions.  Instead, federal courts apply the most analogous state statute of limitations.  In Ohio, the statute of limitations for actions under 42 U.S.C. §§ 1983 is two years.  *Friedman v. Estate of Presser*, 929 F.2d 1151, 1158 (6th Cir. 1991).

    The statute of limitations begins to run when a plaintiff "knows or has reason to know of the injury which is the basis of his action."  *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir.1984).  The plaintiffs filed the present suit on November 12, 2004.  Unless the plaintiffs can provide sufficient evidence of a continuing violation, all claims related to events or injuries occurring prior to November 12, 2002 are time-barred.

---

[14/] In their motion for summary judgment, the defendants argue that any claims the plaintiffs may have relating to the constitutionality of the 2002 Bench Signs Ordinance are barred by both the doctrine of res judicata and the Rooker-Feldman doctrine.  In response, the plaintiffs maintain that they are not challenging the constitutionality of either of the Bench Signs Ordinances or arguing that the enforcement of these ordinances enacted a taking of the plaintiffs' property.  As such, the Court does not address the defendants' arguments that such claims are barred; however, the Court also notes that the plaintiffs are precluded from later arguing that the Bench Signs Ordinances are unconstitutional in the present suit.

Case No. 1:04-CV-02248
Gwin, J.

With regard to the bench signs dispute, the plaintiffs argue that their claim of selective enforcement relates not to the passage of the various bench signs ordinances, but rather to the City of Canton's decision to seek judicial approval of its attempt to revoke the plaintiffs' bench sign permits in October 2000.

The plaintiffs argue that the limitations period for this claim did not begin to run until January 12, 2004, when on remand, the trial court found that the defendants could not lawfully revoke all of the plaintiffs' bench sign permits, but instead could revoke only those sixty-six permits for which the City had given proper notice of a zoning code violation and an opportunity to cure the violation. Essentially, the plaintiffs claim that they did not realize that they might have some claim against the City for its attempts to revoke all of the plaintiffs' permits until the trial court determined which specific bench signs the City had unlawfully removed.

The Court finds this argument is not persuasive. Instead, the Court finds that at the very latest, the plaintiffs were put on notice of a possible violation on April 15, 2002, when the state appellate court ruled that the City could not revoke all 400 bench sign permits without giving the plaintiffs notice of some violation and an opportunity to cure that violation with regard to each separate permit. At this time the Plaintiffs should have been well aware that they had not received notice of a code violation for all of their bench signs and that at least a portion of the benches that the City removed were removed without proper notice. Moreover, the City had already revoked permits, at least temporarily. Thus, the plaintiffs' selective enforcement claim is based on the removal of the benches and the revocation of the bench sign permits and the statute of limitations had expired at the latest on April 15, 2004, several months before the plaintiffs filed the present suit.

Additionally, the Court finds that the plaintiffs complaints of earlier problems with the bench

-14-

Case No. 1:04-CV-02248
Gwin, J.

signs are also time-barred. Specifically, the plaintiffs allege that the defendants violated the plaintiffs' First Amendment right to free speech by requiring that the plaintiffs remove certain signs due to the content of the advertisements. Whether the plaintiffs intend to assert this as a separate constitutional violation or as part of their selective enforcement claim, these events occurred nearly ten to twelve years ago, well outside of the limitations period. At the time, the plaintiffs admit that they disagreed with the validity of several of Zengler's objections to the bench signs. It is thus clear that any possible claims the plaintiffs may have had in relation to Zengler's specific requests that the Plaintiffs either remove various bench signs or bring them into compliance with local zoning codes were known to the Plaintiffs prior to November 12, 2002 and are thus time barred.

The Court similarly finds that the majority of the plaintiffs' complaints of selective enforcement of zoning codes related to the liquor licensing and building permits are time-barred. With the exception of the Liquor Licensing Board's denial of a permit for the 719 Cook Avenue location, all of the plaintiffs' other alleged problems obtaining liquor licenses and building permits appear to have occurred several years prior to November 12, 2002.

Recognizing that many of the events in question did indeed occur well outside of the traditional limitations period, the plaintiffs argue that the period should be tolled because they have presented evidence that these events are part of a continuing violation of their rights. Where a plaintiff can demonstrate a continuing violation, the statute of limitations expands to reach back to the first date of the violation. *Sharpe v. Cureton*, 319 F.3d 259, 268-69 (6th Cir. 2003). A continuing violation "requires continued action and not simply continuing harm or 'passive inaction.'" *Moss v. Columbus Bd of Educ.*, 98 Fed. Appx. 393, 396 (6th Cir. 2004). Moreover, Courts have been extremely reluctant to apply the continuing violations doctrine outside of the

-15-

Case No. 1:04-CV-02248
Gwin, J.

context of Title VII claims.  *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n. 3 (6th Cir. 1995); *Laney Brentwood Homes, LLC v. Town of Collierville*, 2005 Fed. App. 673, 2005 WL 1875473, at *4 (6th Cir. 2005) (slip copy).

There are essentially two ways that a person can show a continuing violation.  First, a plaintiffs can demonstrate a "longstanding and demonstrable policy of discrimination." *LRL Props.*, 55 F.3d at 1105-06.  "Unrelated incidents of discrimination will not suffice to invoke this exception; rather there must be a continuing overarching policy of discrimination." *Id.* at 1106 (internal quotation marks omitted).  The other method of showing a continuing violation is to provide "evidence of present discriminatory activity giving rise to a claim of a continuing violation...." *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991).  This occurs, for example, where an unconstitutional ordinance continues to deprive an individual of his rights.  In such a case, the violation takes place not only when the ordinance is passed but every day that the ordinance is in force. *See Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 521-22 (6th Cir. 1997).  It also occurs when a governmental entity or official repeatedly takes some discriminatory act, such as when an employer repeatedly dispenses unequal pay for unequal work. *See Dixon*, 928 F.2d at 216 ("The rationale underlying this category is that the employer commits an illegal act, such as giving unequal pay for equal work, each time the employer dispenses the unequal pay.  This result follows from the fact that paying unequal wages for equal work is in itself the forbidden discriminatory act.  It is irrelevant that the employer has committed the same illegal act at other times prior to the beginning of the relevant limitations period.").

The Court finds that the plaintiffs demonstrate neither form of continuing violation.  First, while the plaintiffs attempt to paint a picture of the defendants' ongoing conspiracy to discriminate

-16-

Case No. 1:04-CV-02248
Gwin, J.

against Plaintiff Koury, the plaintiffs merely point to a series of discreet instances, the majority of which involve no constitutional violation. In *LRL Props. v. Portage Metro Hous. Auth.*, a case similar to the present suit, the Sixth Circuit held that no continuing violation existed. 55 F.3d at 1097. In that case, a group of low income property developers alleged that the local housing authority engaged in a conspiracy to replace the plaintiffs with other developers to selectively enforce certain building or housing codes and federal regulations against the plaintiffs. The Sixth Circuit found that the "plaintiffs are complaining of a series of discrete and separate acts that, at best, are separate incidents of discrimination and are not sufficient, even when the plaintiffs' pleadings are liberally construed, to establish an over-arching policy of discrimination." *LRL Props.*, 55 F.3d at 1106. The same is true in the instant case. Many of the instances of which the plaintiffs complain are unrelated and involve different departments of the City of Canton government. In essence, the plaintiffs attempt to string together every encounter they have had with the City that did not proceed as they believed it should or that was not resolved in their favor.

The plaintiffs also fail to show the existence of any present discriminatory activity qualifying as a constitutional violation. The only incidents that occurred after November 12, 2002, are the Liquor Licensing Board's August 2004 denial of a liquor license for the 719 Cook Avenue location and the alleged incident that occurred at the 2004 meeting of the Elections Board in Columbus, Ohio. In arguing that these events amount to present discrimination showing a continuing violation, the plaintiffs confuse the concept of present discrimination as a continuing violation with the concept of an ongoing policy of discrimination.

In the present case, the defendants do not allege that the 2004 events are linked to some earlier event. The plaintiffs, instead, simply argue that because the defendants allegedly took

-17-

Case No. 1:04-CV-02248
Gwin, J.

discriminatory action against the plaintiffs in 2004, the statute of limitations is somehow tolled for all prior allegations of discrimination.  In essence, the plaintiffs make an ongoing policy of discrimination argument.  As discussed above, the plaintiffs fail to demonstrate such a policy.

> B.       *Many of the allegations Underlying the Plaintiffs' § 1983 Claims are Precluded by the Doctrine of Res Judicata*

The doctrine of claim preclusion or res judicata provides that "'[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"[15]  *Rivet v. Regions Bank*, 522 U.S. 470, 476 (1998) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).  The purposes of the doctrine are manifest.  By preserving the finality of judgments and requiring parties to bring all claims in one action, the doctrine avoids the potential for inconsistent decisions and conserves judicial and litigant resources.

The United States Supreme Court has held that federal claims that a plaintiff raised or could have raised in a state court proceeding cannot later be brought in a § 1983 action in federal court.  *See Allen v. McCurry*, 449 U.S. 90, 104 (1980); *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 83-86 (1984).

A party asserting claim preclusion must establish three elements: (1) a prior judgment on the merits; (2) an identity of the parties or their privies; and  (3) an identity of the causes of action.  *See Re/Max Int'l, Inc. v. Zames*, 995 F. Supp. 781,  785 (N.D. Ohio 1998); *see also Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995).  Claims constitute the same cause of action for

---

[15]/Claim preclusion is the preferred term for the traditional doctrine of *res judicata*.  *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984).

Case No. 1:04-CV-02248
Gwin, J.

purposes of claim preclusion when they arise out of the same transaction and occurrence, or the same core of operative facts. *See In re Micro-Time Management Systems, Inc.*, 983 F.2d 1067, 1993 WL 7524, at *5 (6th Cir. 1993). If two claims arise from the same event and seek to redress the same basic wrong, they are identical causes of actions notwithstanding which specific facts the plaintiff relies on in stating a claim for relief. *See Kale v. Combined Ins. Co. of America*, 924 F.2d 1161, 1166 (1st Cir. 1991).

Applying these principles, the Court first finds that any claims the plaintiffs assert regarding the defendants' interference with the plaintiffs' first amendment right to be free from impermissible content-based restrictions on their bench signs is precluded. The plaintiffs allege three instances where the defendants requested that they remove signs due to the content of the advertisement. To the extent that the plaintiffs' refusal to remove these signs may have formed part of the defendants' basis for later seeking revocation of the bench sign permits in state court, the plaintiffs had sufficient opportunity to raise any possible violation of their right to free speech. The same parties were involved in the state court bench signs litigation. Moreover, the state court suit arose out of the same core of operative fact, namely the plaintiffs' failure to comply with various notices from the defendants regarding certain bench signs being in violation of zoning codes. Beyond having opportunity to raise their First Amendment rights as a defense or counterclaim in that suit, such a tack would have been much more sensible than raising those claims now, nearly eight years later.

For many of the same reasons, the Court additionally finds that any claim that the revocation of the permits amounted to an unconstitutional taking or a violation of the plaintiffs' procedural or substantive due process rights is also precluded. The plaintiffs had the same opportunity as described above to assert these claims in the state court proceedings. Furthermore, to the extent that

-19-

Case No. 1:04-CV-02248
Gwin, J.

the plaintiffs missed this opportunity they cannot in the present suit simply disguise these claims within their larger selective enforcement claim.

> C. *The Plaintiffs Fail to Provide Sufficient Evidence of a Violation of Their Constitutional Rights*

With the majority of the plaintiffs' § 1983 claims dismissed on procedural grounds, the Court is left only with the possible claims relating to the two incidents that allegedly occurred in 2004–the dispute over the liquor license at the Cook Avenue location and the alleged comments that Mayor Creighton made at the meeting of the Elections Board. Turning first to the liquor license, the plaintiffs argue as part of their selective enforcement claim that the defendants discriminated against Plaintiff Koury in objecting to his application for a license.

A selective enforcement claim is essentially rooted in Fourteenth Amendment equal protection jurisprudence. Ordinarily, to prevail on a selective enforcement claim the plaintiff must show that he was singled out because of his membership in an identifiable or protected group or because the plaintiff was exercising a constitutional right. *See Rowe v. City of Elyria*, 38 Fed. Appx. 277, 281 (6th Cir. 2002) (quoting *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 (6th Cir. 1996)). In the present case, the plaintiffs show neither.

Failing to demonstrate the traditional requirements for a selective enforcement claim, the plaintiffs instead rely on the United States Supreme Court's decision in *Village of Willowbrook v. Olech*, for the proposition that a plaintiff, belonging to a class of one, can demonstrate that an official had no rational basis for taking a certain action or enforcing a certain code. 528 U.S. 562 (2000) (holding that a plaintiff's allegation that the defendant municipality demanded a larger easement than usual before connecting the plaintiff to a water supply sufficiently  stated a claim

-20-

Case No. 1:04-CV-02248
Gwin, J.

under traditional equal protection analysis); *see also Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004).  Essentially, where a plaintiff cannot show that he is a member of a protected class or that a fundamental right is at stake in his selective enforcement claim, the courts apply rational review. Thus as long as the defendant can articulate a rational basis for taking the challenged governmental action, the defendant will prevail.

Applying this standard, the plaintiffs argue that there is no conceivable basis for the defendants' objection to Koury opening the Cook Avenue convenience store and that instead, the defendants opposed Koury's application for a liquor license at that location solely due to animus. At the outset, the Court notes that none of the present defendants are responsible for the issuance of liquor licenses.  The Liquor Licensing Board, a state agency, rather than the City of Canton, denied the liquor licenses.  While the current defendants have is the power to request a hearing before the Board regarding a particular application, they have no power to deny the permit. However, the plaintiffs neither sue the Liquor Licensing Board nor argue that the Board otherwise lacked a rational basis for denying the liquor license.  It is counterintuitive to claim that the council members had no basis to oppose the licenses while failing to refute the Liquor Licensing Board's reasons for denying the license.

The plaintiffs thus seem simply to allege that the council members had no business opposing the licences. This of course, cannot be true.  The plaintiffs have no constitutional right to obtain a liquor license free from governmental scrutiny.  The very reason the city council has discretion to request a hearing on an individual's application for such a license is to address concerns the local government may have relating to the Liquor Licensing Board's decision to issue a license for a particular location or individual.  The plaintiffs fail to show that the defendants lacked a rational

-21-

Case No. 1:04-CV-02248
Gwin, J.

basis to exercise this discretion in the present case or that the defendants did not request hearings as to other applications submitted by similarly situated individuals.

The city council, perhaps guided by Council Member Zachary and the feedback she obtained from her constituents, requested the hearing due to valid concerns over Plaintiff Koury's plan to sell dented cans at the Cook Avenue store. The defendants claim that many of the citizens in the area opposed such a store and that Zachary believed the idea of selling dented or damaged cans degraded the people of that community. Moreover, the plaintiffs fail to show that any of the council members' objections actually caused the Liquor Licensing Board to deny Koury's applications. If the plaintiffs believe that the Board denied Koury liquor licences on a discriminatory basis, then their complaint lies properly with the Board, not with the City of Canton or its agents.

Aside from the selective enforcement claim involving the liquor license, the plaintiffs also attempt to state a First Amendment claim relating to Mayor Creighton's alleged comments at the Elections Board in 2004. The Court finds, however, the plaintiffs provide no evidence of what Mayor Creighton specifically said, no evidence that her comments were false, and most importantly, no evidence that her alleged comments actually prevented Koury from speaking to the Elections Board. The plaintiffs therefore fail to allege a violation of Koury's constitutional rights.

> D.      *The Defendant City Council Members are Entitled to Absolute Legislative Immunity*

The defendants alternatively argue that their decision to request a hearing before the liquor licensing Board is legislative in nature, entitling them to absolute immunity. The United States Supreme Court extended legislative immunity to municipal officials performing legislative acts in *Bogan v. Scott-Harris*, 523 U.S. 44 (1993). The Supreme Court also noted that this immunity applies to legislative acts regardless of the official's motive, stating that immunity "would be of little

-22-

Case No. 1:04-CV-02248
Gwin, J.

value if [legislators] could be subjected to the cost and inconvenience  and distractions of a trial"

on the issue of legislative motive.  *Id.* at 54-55.

The city counsel member defendants argue that they engaged in protected legislative activity

when they requested a hearing on the liquor licenses.  As the defendants point out, Ohio Rev. Code

§ 4303.26 requires the Division of Liquor Control to notify the local city council whenever someone

applies for a new liquor license or for the transfer of an existing license.  The plaintiffs admit that

this statute also permits local city council to request a hearing prior to the Board's determination of

whether to issue the license.  However, the plaintiffs argue that the defendants' act of passing a

resolution to request such a hearing is not a legislative function because it does not involve the

passage of an ordinance.

Courts consider official action to be legislative when it is both legislative in form and in

substance.  In other words when the act is linked to the traditional legislative process and involves

discretionary policymaking.  *See Acierno v. Cloutier*, 40 F.3d 597 (3d Cir. 1994).  Several courts

have found that state and local officials engaged in activities that are the special prerogative of the

legislative body other than passing legislation or ordinances are engaging in legislative activity.  *See*

*Whitener v. McWatters*, 112 F.3d 740 (4th Cir. 1997) (finding that a county board of supervisors'

act of disciplining one of its own members was a legislative function); *Larsen v. Senate of Com. of*

*Pa.*, 152 F.3d 240 (3d Cir. 1998) (impeachment proceedings undertaken by state legislators are

legislative in nature).

However, other courts have found that where a particular action is narrow in scope, relating

to one person rather than broad policy considerations, the action is executive or administrative rather

than legislative.  *See Keys Youth Services, Inc. v. City of Olathe*, 38 F. Supp. 2d 914 (D. Kan. 1999)

-23-

Case No. 1:04-CV-02248
Gwin, J.

(finding that members of a city council performed a quasi-judicial or administrative act, rather than a legislative act, in denying a special use permit to a not-for-profit corporation seeking to build a group home for youths).

In the present case, the city counsel members did not actually determine whether or not to grant Plaintiff Koury the liquor licenses so their actions were not quasi-judicial in nature.  While their request for a hearing pertained to a specific individual's application for a license rather than to any general policy concern, the Ohio legislature delegated this responsibility to the city counsel, thus vesting them with the special prerogative of requesting such hearings.  Similar to the traditional legislative process, the council members adopted a formal resolution to request a hearing on the Cook Avenue application.  The Court thus finds that their acts were legislative in nature and that the city council member defendants are entitled to absolute immunity for their requests.

Because the Court has found that all of the plaintiffs' § 1983 claims are either barred on procedural grounds or fail to show a violation of the plaintiffs' constitutional rights, it does not address the issue of qualified immunity or the question of whether the plaintiffs provide evidence of a *Monell* violation.[16]

II.     The Plaintiffs Fail to Present Sufficient Evidence in Support of Their State Law Claims

The plaintiffs' state law claim of tortious interference with contract also fails.  The tort of inference with a contractual relationship was first recognized by the Ohio Supreme Court in the case of *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995).  There, the Supreme Court set forth the showing needed to make such a claim.  A plaintiff must prove five

---

[16] *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978) (holding that in order for a municipality to incur liability under § 1983, the local government must have engaged in a practice or policy that directly caused the alleged violation of the plaintiff's constitutional rights).

Case No. 1:04-CV-02248
Gwin, J.

elements: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the

wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5)

resulting damages. *Id.* at 419, 650 N.E.2d 863 (adopting the provisions of the Restatement of the

Law 2d, Torts § 766 (1979)).

Under Ohio law, a defendant may assert a qualified privilege in tortious interference cases.

*Doyle v. Fairfield Mach. Co., Inc.*, 120 Ohio App.3d 192, 218, 697 N.E.2d 667, 683-84 (1997).  This

privilege attaches to all statements that are "fairly made by a person in the discharge of some public

or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his

interest is concerned."  *See Hahn v. Kotten*, 43 Ohio St.2d 237, 244, 331 N.E.2d 713, 718 (1975);

*A & B-Abell Elevator Co.*, 73 Ohio St.3d at 8, 651 N.E.2d at 1290.  The issue of privilege is one of

the key elements in a tortious interference claim and the plaintiff bears the burden to show that a

defendant's actions are neither justified nor privileged. *Super Sulky, Inc. v. U.S. Trotting Ass'n,* 174

F.3d 733, 742 (6th Cir.1999).

The plaintiffs first allege that the defendants interfered with the contract between Bench

Signs and SARTA by seeking to revoke the plaintiffs' bench sign permits.  Citing the plaintiffs' own

assertion that SARTA's breach occurred in 1998 when it terminated the bench signs contract, the

defendants argue that the plaintiffs' tortious interference claim is time-barred.  Under Ohio law, the

statute of limitations for a tortious interference with contract claim is four years.  *El-Shiekh v.*

*Northwest Ohio Cardiology Consultants,* Nos. L-99-1380, CI-97-4238, 2000 WL 1298761, at *2

(Ohio Ct. App. 2000).

The plaintiffs argue that the limitations period should be tolled because the Plaintiffs are still

involved in litigation with SARTA over the bench signs contract.  However, Ohio law dictates that

Case No. 1:04-CV-02248
Gwin, J.

the limitations period begins to run when the events giving rise to the claim occurred.  *See Kabealo v. Huntington Nat. Bank*, No. 94APE09-1387, 1995 WL 141064, at *3 (Ohio Ct. App.1995).  In the instant case, this event would be SARTA's termination of the bench signs contract in 1998.  The plaintiffs knew of the asserted breach at that time and cannot rely on the state court litigation between SARTA and Bench Signs to toll the limitations period.  As the plaintiffs did not file the instant suit until November 2004, their claim for tortious interference with the bench signs contract is time-barred.

Moreover, the Court finds that even if this claim was filed within the limitations period, it would still fail on the merits.  First, the plaintiffs fail to show that the intent of the defendants in filing suit to revoke the bench sign permits was to procure a breach of the SARTA bench signs contract.  Instead, the suit was a response to what the defendants believed was a pattern of zoning code violations.  Finally, the defendants actions in this respect are also qualifiedly privileged.  The enforcement of various zoning codes is clearly within the purview of a city official's public duty.  "[W]here interference has been charged for an act lawful in itself, whether or not there is a right of recovery is determined by balancing the interests of the defendant in doing his otherwise lawful act and of the plaintiff in being free from interference."  *Pearse v. McDonald's Systems of Ohio, Inc.*, 47 Ohio App.2d 20, 25, 351 N.E.2d 788, 791-92 (1975).  In the present case, the scale must fall on the side of the City.

The Plaintiffs next allege that the defendants' 2001 revocation of the bench sign permits also caused the breach of several advertising contracts Bench Signs had with its clients.  These claims likely fall within the limitations period but are nevertheless res judicata. First, the Court notes that this is essentially a takings claim disguised as a tort claim.  As described above, the state trial court

-26-

Case No. 1:04-CV-02248
Gwin, J.

ruled on January 12, 2004 that the 2002 Bench Signs Ordinance, which completely restricted the use of bench signs in Canton, was constitutional and not a government taking.  Recently, the state appellate court affirmed this ruling.

Seeking to circumvent the state court holding, the plaintiffs now allege that they are not arguing that the ordinance itself constitutes a taking or amounts to tortious interference with contract, but rather that the defendants' temporary revocation of plaintiffs' bench sign permits in 2001 is the current focus of the plaintiffs' claims.  However, these events form part of the same nucleus of operative fact.  The plaintiffs could easily have asserted any claims relating to the 2001 revocation of Plaintiffs' permits, whether sounding in tort or constitutional law, in the state court litigation involving the 2002 Bench Signs Ordinance.  As such, the plaintiffs' tortious interference claim is barred by the doctrine of res judicata.

This leaves one remaining tortious interference claim involving statements that Defendant Zachary allegedly made to Wayne Marion suggesting that Marion cease doing business with Koury.  Though Zachary allegedly made this comment during a conversation regarding her opposition to Marion and Koury obtaining a liquor license at the Cook Avenue location, the Court finds that Zachary's specific statement about doing business with Koury is of minimal, if any, significance.

Marion decided to terminate his partnership with Koury after the Liquor Licensing Board denied their application for a license.  The Board's refusal to grant a license for that location frustrated the purpose of the joint venture between Koury and Marion.  As a result, Koury agreed to take over Marion's potion of the lease.  Though the plaintiffs allege that Marion has since determined not to enter into other business ventures with Koury, they provide no evidence of these alleged opportunities.  The Court thus finds that the plaintiffs fail to provide sufficient evidence that

-27-

Case No. 1:04-CV-02248
Gwin, J.

Defendant Zachary tortiously interfered with the contract between Marion and Plaintiff Koury.

### CONCLUSION

For the reasons stated above, the Court finds the majority of the plaintiffs' federal and state law claims to be barred by the applicable statutes of limitation or the doctrine of res judicata.  In addition, the Court finds the plaintiffs failed to provide sufficient evidence of a violation of their constitutional rights.  Finally, the Court also finds that the plaintiffs did not point to evidence creating a material issue of fact regarding Plaintiffs' claim that Defendant Zachary's comments to Marion amount to tortious interference with contract.  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment involving all of the plaintiffs' § 1983 claims and state law claims for tortious interference with contract.

IT IS SO ORDERED.


Dated: October 17, 2005                                s/_____*James S. Gwin*_____
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE

-28-